## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| SOLAR TRUST OF AMERICA, LLC, a | ) | Case No. 12-11136(KG) |
| Delaware limited liability company, *et al.*, | ) | |
| | ) | |
| Debtors. | ) | **Re: D.I. 1064** |
| ——————————————— | ) | |

## MEMORANDUM OPINION

This opinion addresses the motion for summary judgment (the "Motion") filed by Krammer Jahn Rechtsanwälte PartG mbB ("Krammer Jahn"), a German law firm. (D.I. 1064). The Motion stems from Krammer Jahn's unsecured claim for attorneys' fees filed in the instant Chapter 11 case of Solar Trust of America, LLC (hereinafter "STA" or "Debtors"). Krammer Jahn seeks the allowance of its claim and that the Court overrule the Liquidation Trustee's claim objection.

For the reasons detailed below, the Court finds that Krammer Jahn is not entitled to judgment as a matter of law and thus will deny the Motion.

### Background

The present contested matter arises out of the Chapter 11 bankruptcy filing of STA on April 2, 2012 (the "Petition Date"). Prior to the STA bankruptcy filing, former Solar Millennium CEO, Utz Claassen (hereinafter "Claassen"), sued STA and others in an action (the "Claassen Suit") in the district court in Hannover, Germany (the "German Lower Court"). Declaration of Jochen Jahn ("Jahn Decl.") (D.I. 1065), Ex. A. In the Claassen Suit, Claassen sought a declaratory judgment that there was no basis for a defamation action by STA and others against him and that the most that STA and others could recover from him

was €25,000. *Id.* at ¶ 16.  Krammer Jahn represented STA and successfully defended against the Claassen Suit in the German Lower Court. *Id.* at ¶¶ 12-13.  In the engagement letter, STA and Krammer Jahn agreed that German law would govern the attorney client relationship. *Id.* at Ex. B.  The Debtors paid Krammer Jahn €30,262 for services rendered in the Claassen Suit.  *Id.* at ¶ 23.

Claassen then appealed the German Lower Court's dismissal to the Oberlandesgericht Celle, Germany  ("German Appellate Court") on January 18, 2012. *Id.* at ¶ 14.

Prior to the German Appellate Court issuing its decision (the "German Opinion"), STA filed its bankruptcy case on April 2, 2012 (the "Petition Date"). On July 5, 2012 the German Appellate Court issued its decision dismissing Claassen's claim and additionally determining that the amount in controversy, which under German law is the basis for the fee award to Krammer Jahn, was much higher than the German Court's determination. On July 12, 2012 the German Appellate Court entered the German Appellate Court Opinion valuing the matter in dispute in the Claassen Suit at €30,000,000.   The German Court had valued the Claassen Suit at  €25,000.  *Id.* at ¶ 16.

On August 8, 2012 Krammer Jahn filed a general unsecured proof of claim (the "POC") in the Chapter 11 proceeding in the amount of €228,760, less €30,262 in payments STA previously paid to the firm. *Id.* at ¶ 18.  After deducting the amounts already paid to it by the Debtors, Krammer Jahn calculates it is owed  €194,498 or $264,319.94 (using a conversion rate of $1.3316 per Euro which was the prevailing conversion rate on the

Petition Date) for legal fees. *Id.* at ¶ 22-23.  In the POC, Krammer Jahn explains that it calculated its attorneys' fees based on an application of German statutory fee scales to the amount in controversy in the Claassen Suit, in accordance with the German Lawyer's Fees Act (Rechtsanwaltsvergütungsgesetz or "RVG") and German Federal Regulations for Lawyers (Bundesrechtsanwaltsordnung or "BRAO").

## Jurisdiction

The Court has jurisdiction over the present matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of  28 U.S.C. §§ 157(b)(2).

## Standard of Review

This Court analyzes the issues below in accordance with the standard of review applicable to summary judgment motions. Pursuant to Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate if the pleadings, depositions, and admissions that are part of the record, demonstrate the absence of any genuine issue of material fact which in turn would entitle the moving party to judgment as a matter of law. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). Once a movant has carried its burden under Federal Rule of Civil Procedure 56(c), the burden shifts and respondents can survive a summary judgment motion by establishing that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "In determining whether a genuine issue of fact exists, we resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving

party." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004).

Summary judgment is best utilized when it is invoked for one of its primary purposes, such as the isolation and disposition of claims or defenses that are not supported by the facts of the case. *See Celotex*, 477 U.S. at 323-24. In expansive disputes such as the one present here, summary judgment gives the parties an opportunity to promote judicial efficiency by avoiding a lengthy and expensive trial on an unwinnable claim or defense. *In re WL Homes, LLC*, 452 B.R. 138, 142 (Bankr. D. Del. 2011)("Summary judgment may be properly granted 'as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways.'")(citing *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (5th Cir.1991)).

### Discussion

As a matter of law, the fees to which Krammer Jahn is entitled is to be measured by a reasonableness standard and not in accordance with the German statutory scheme. Accordingly, there are genuine issues of material fact surrounding the reasonableness of the additional attorneys' fees. This precludes a grant of summary judgment in favor of Krammer Jahn on the Claim Objection to Krammer Jahn's POC.  The decision of the German Appellate Court violated the automatic stay because the decision came after STA filed for bankruptcy and the automatic stay was in place, rendering that decision void in this proceeding. Furthermore, there remains a genuine question as to the reasonable value of services provided by Krammer Jahn since Krammer Jahn did not render additional services justifying these additional fees which dwarf the original fees.   Without an

4

evidentiary hearing, the Court cannot determine if the fees are reasonable or unconscionable.

### *The Automatic Stay*

As a preliminary matter, because the granting of relief or the failure to request relief from the automatic stay, triggered by STA's bankruptcy, present questions about the Court's jurisdiction to consider aspects of the appeal, the Court has "inherent power and a continuing obligation to determine [its] own jurisdiction." *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1198 (3d Cir.1991). The purpose of the automatic stay is twofold: (1) to protect the debtor, by stopping all collection efforts, harassment, and foreclosure actions, thereby giving the debtor a respite from creditors and a chance "to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him into bankruptcy;" and (2) to protect "creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors." *Id.* at 1204.

The stay is "automatic" because it is triggered upon the filing of a bankruptcy petition regardless of whether the other parties to the stayed proceeding are aware that a petition has been filed. The automatic stay cannot be waived. Relief from the stay can be granted only by the bankruptcy court having jurisdiction over a debtor's case. *Id*. A party in interest may obtain relief from stay, pursuant to Section 362(d)(1), by requesting the relief from the bankruptcy court and, after notice and a hearing, showing cause. 11 U.S.C. § 362(d)(1).

The automatic stay is broad in scope, directing that "[a]ll judicial actions against a debtor seeking recovery on a claim that were or could have been brought before commencement of a bankruptcy case, are automatically stayed." *Maritime*, 959 F.2d at 1203, 1206. Thus, "[o]nce triggered by a debtor's bankruptcy petition, the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor." *Id.* at 1206.

Here, the German Appellate Court Opinion, which forms the basis of Krammer Jahn's POC, was issued in July of 2012, after the Debtor's chapter 11 case was filed and after the Section 362 automatic stay took effect. Krammer Jahn argues that the German Appellate Court Opinion does not violate the automatic stay because it was a ministerial act, which is usually an exception to the automatic stay. However, Krammer Jahn fails to offer any legal precedence under German law that the German Appellate Court Opinion was ministerial.

An act is ministerial where "the obligation to act [is] peremptory, and plainly defined." *United States ex re.l. McLennan v. Wilbur*, 283 U.S. 414, 420 (1931). If an act is ministerial in nature, the act, even if taken post-petition within the context of a judicial or other court proceeding does not violate the automatic stay. *Chase Manhattan Bank v. Pulcini* (*In re Pulcini*), 261 B.R. 836, 841 (Bankr. W.D. Pa. 2001). Krammer Jahn relies on two cases, *In re Connors* and *In re Aultman*, that respectively determine that the delivery of a sheriff's deed and entry of a judgment on a state docket are ministerial acts. *In re Connors*, 497 F.3d 314, 321 (3d Cir. 2007) (the delivery of a sheriff's deed is a ministerial act that does not

6

violate the automatic stay); *Electric M & R. Inc., v. Aultman* (*In re Aultman*), 223 B.R. 481, 485 (Bankr. W.D. Pa. 1998) (the entry of a judgment on state docket is a purely ministerial act that does not violate the automatic stay). Neither of the case examples is helpful to the Court in the present case which involves attorneys' fees based on a German statute that bases fees on the amount in controversy. There is no showing that the German courts would classify the German Appellate Court Opinion as a ministerial act. The Court certainly does not agree that the post-petition German Appellate Opinion was a ministerial act. *See, e.g., Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, (1ˢᵗ Cir. 1998), making it clear that a judge's ruling is not a ministerial act. It is obvious to the Court that the German Appellate Court's qualitative and quantitative determination that the amount in controversy in the Claassen Suit was €30,000,000, not €25,000, was not ministerial.

Furthermore, the Debtors were not present, nor did they participate in the proceedings before the German Appellate Court. The Court never asked to, nor did it, authorize Krammer Jahn to act on the Debtors' behalf in the German Appellate Court proceeding. The Court has exclusive jurisdiction and the German Appellate Court has no jurisdiction over the post-petition proceeding, and an act by the German Court or the German Appellate Court, absent it being a ministerial act, is a violation of the automatic stay.

As a result, the German Appellate Court Opinion is void, as a matter of law, since it violated the automatic stay. Accordingly, the value of the Krammer Jahn claim remains a question of fact.

7

*Reasonableness of Legal Fees*

German statutory laws determine legal fees. There is a rigid calculation of legal fees under German law and German lawyers are prohibited from agreeing or even requesting fees and expenses less than that scheduled by the Rechtsanwalsvergütungsgesetz (RVG). Jahn Decl., ¶¶ 20-21. This instruction is based on the legal regulations pursuant to Sections (4)(1) RVG, 49b(1) of the Federal Regulations for Lawyers (BRAO). BRAO Section 49(b)(1) states: "*Es ist unzulässig, geringere Gebühren und Auslagen zu vereinbaren oder zu fordern, als das Rechtsanwaltsvergütungsgesetz vorsieht, soweit dieses nichts anderes bestimmt.*" ("It is not permissible to agree on or to bill for lower fees and disbursements than those provided for in the RVG in as far as nothing to the contrary is set out therein.")

Krammer Jahn argues that the Court should not revisit the reasonableness of its alleged fees and expenses, since the German statute, *i.e.*, the RVG, determines the fees. The German statutory fee calculation is based on the amount at issue, not the reasonableness in relation to the work performed. However, Section 502(b)(4) of the Bankruptcy Code explicitly mandates a review of the reasonableness of attorney fees:

> if [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that- **if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services**.

(emphasis added) 11 U.S.C. § 502(B)(4).

The legislative comments to section 502(b)(4) also make it clear that the provision is designed to enable the Court to examine independently the claim of a debtor's attorney

and gives the Court the power to disallow fees to the extent they exceed reasonable value of the services provided. See H.R. Rep. No. 595, 95th Cong., 1st Sess. 353 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 62 (1978) (section 502(b)(4) "permits the court to examine the claim of a debtor's attorney independently of any other provision of this subsection, and to disallow it to the extent that it exceeds the reasonable value of the attorney's services."). Thus, the attorney's claim for services rendered to a debtor will only be allowed to the extent that the Court determines that the value of those services is reasonable.

The German Appellate Court Opinion does not trump this Court's power to review attorneys' fees under section 502(b)(4). Krammer Jahn's legal fees are presumptively reasonable until the Trustee presents evidence "more than the non-movant's own pleadings, denials and affidavits" that they are not. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Krammer Jahn interprets this as requiring the Trustee to assert that the mechanical application of the German statutory fee scales is in some way unreasonably calculated. However, that is not what the Trustee needs to do, nor is this the only way that the fees can be found to be unreasonable. The Trustee must only present evidence that the legal fees may be unreasonable and in need of this Court's review. In this case the Trustee did present evidence that these fees are unreasonable. Krammer Jahn originally billed the Debtors €30,262 (the equivalent of $40,296.87 using a conversion rate of $1.3316 per Euro) for the services provided in the Hannover Court action. The Debtors paid Krammer Jahn for those services and only after STA entered bankruptcy did the German Appellate Court Opinion determine that the Debtors were required to pay an additional €198,498, or

$264,319.94 (using a conversion rate of $1.3316 per Euro). Not only is this amount 600% greater than the amount previously paid to Krammer Jahn, but the Debtors were not present or represented in the German Appellate Court proceeding. Furthermore, there is no clear basis for concluding these fees are for any additional services rendered by Krammer Jahn or any other reason to justify a 600% increase in lawyer fees. This raises serious questions about the reasonableness of the additional attorneys' fees. The increase in fees would have an enormous impact on the liquidation trust and distributions to other creditors.

### *Rooker-Feldman Doctrine*

The *Rooker-Feldman* doctrine is a rule enunciated by the United States Supreme Court in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine provides that lower federal courts do not have subject matter jurisdiction to sit in direct review of state court decisions unless Congress has enacted legislation that specifically authorizes such relief. In 2005, the Supreme Court revisited and narrowly construed the doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), ruling "the *Rooker-Feldman* doctrine . . .is confined to. . .cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgements."

Krammer Jahn's reliance on the *Rooker-Feldman* doctrine is misplaced because there is no basis to conclude that the doctrine applies to foreign court decisions. In fact, the

doctrine is specifically tailored to state court decisions. Furthermore, this Court is not being asked by the Trustee to revisit the German Appellate Court Opinion but is being asked to decide whether the Opinion is void as a matter of law for violating the automatic stay, or if it is not void, whether this Court can and should review the attorney's fees sought by Krammer Jahn in accordance with the reasonable value standard of section 502(b)(4).

### *Comity*

Another consideration in this case is international comity. In general, "[u]nder the principle of international comity, a domestic court normally will give effect to executive, legislative, and **judicial acts** of a foreign nation." (emphasis added) *Remington Rand v. Business Sys. Inc.*, 830 F.2d 1260, 1266 (3d Cir.1987). More specifically, the Third Circuit has stated that "[c]omity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir.1971) (citations and footnote omitted), cert. denied, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972). Thus, a court may, within its discretion, deny comity to a foreign judicial act if it finds that the extension of comity "would be contrary or prejudicial to the interest of the" United States. *Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A.*, 44 F.3d 187, 191 (3d Cir. 1994).

Although international comity requires deference to be given to decisions by competent international courts, this Court cannot simply ignore its own responsibility to review the reasonableness of attorneys' fees when the fees directly affect the bankruptcy case. This is especially true in the insolvency context where the judicial action violates the

11

automatic stay and the Debtor was not present or represented in the foreign proceeding.

The purpose behind the automatic stay, and why the Court must evaluate the reasonableness of fees under 502(b)(4), is to ensure that a debtor who has invoked the protection of bankruptcy is not subject to unreasonable attorneys' fees. The reasoning behind this policy is illuminated in the *In re Boulder Crossroads* decision which explains that section 502(b)(4) applies to all claims for attorney's fees owed by a debtor for services provided pre-petition. *In re Boulder Crossroads, LLC*, 2010 Bankr. LEXIS 4437, *37 (Bankr. W.D. Tex. Nov. 30. 2010). The court in *Boulder Crossroads* further explained that the contract rate billed does not determine the value of the claim once the debtor is in bankruptcy and, at that point, the claim is disallowed to the extent that it exceeds the reasonable value for those services and the burden of proof rests on the attorney claimant. *Id.*

The policy behind the *Boulder Crossroads* decision can be applied to this instant proceeding. Even though there is a strict calculation under German statute that is applied to attorneys' fees, once STA entered bankruptcy it became the Court's duty to ensure that the fees are reasonable. The claim is disallowed to the extent the fees exceed the reasonable value for those services. Courtesy and consideration for the decision of the German courts do not require the Court to abdicate its responsibility to review fees for reasonableness.

**Conclusion**

The German Appellate Court Opinion on which the fees are calculated is void as the decision violated the automatic stay. Krammer Jahn is not entitled to judgment as a matter of law and a factual issue about the reasonable amount of attorneys' fees that form the basis of the Krammer Jahn POC remains.

For the reasons outlined above, the Court will deny the Motion. The Court finds that the Court must determine the reasonableness of the attorneys' fees comprising the Krammer Jahn POC.  The parties will be directed to schedule an evidentiary hearing to enable the Court to determine the reasonable fees to which Krammer Jahn is entitled.

Dated: January 12, 2015

KEVIN GROSS, U.S.B.J.